Paul J. Valentine – 029393
pvalentine@jsslaw.com
Andy J. Chambers – 023146
achambers@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Attorneys for Plaintiff/Creditor Wendy Hall*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Scott Welty,<br><br>Debtor. | Chapter 13 Proceedings<br><br>Case No. 2:16-bk-11089 (BKM)<br><br>Adversary No. 2:17-ap-00125 |
| Wendy Hall,<br><br>Plaintiff,<br><br>Vs.<br><br>Scott Welty,<br><br>Defendant. | **COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523 (a)(2)(A), (a)(2)(B), and (a)(5)**<br><br>**AND**<br><br>**OBJECTION TO DISCHARGE** |

Plaintiff/Creditor Wendy Hall ("Ms. Hall") seeks a determination, pursuant to 11 U.S.C. §§ 523 (a)(2)(A), (a)(2)(B), and (a)(5), that the debts and financial obligations of Defendant/Debtor Scott Welty ("Debtor") under a 2014 Consent Decree of Dissolution and an associated Settlement Agreement (collectively the "Consent Decree")[1] are not subject to discharge, and that certain acts, omissions, and sworn statements made by Debtor prevent Debtor from receiving a discharge in this case.

---

[1] A true and correct copy of the Consent Decree is included with Ms. Hall's Proof of Claim at Claim Doc. 2-1, all of which is incorporated herein by this reference.

## JURISDICTION AND VENUE

1. On September 27, 2016 (the "Petition Date"), the Debtor filed his Voluntary Petition for relief under Chapter 13 of the United States Bankruptcy Code.

2. This Court has jurisdiction over this proceeding under Chapter 11 of Title 11 of the United States Code ("Code"), pursuant to 28 U.S.C. §§ 151, 157, and 1334.

3. This adversary proceeding was commenced pursuant to §§ 105(a), 523 and 1328 of the Code, and to Fed. R. Bankr. P. 7001, *et seq.*

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409, because the adversary proceeding arises under the Code and arises in, or relates to, a case pending in this District under the Code. Because the Debtor purports to be a resident of Maricopa County, Local Bankr. R. 1071-1(b) dictates that the matter be handled by this Division.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (J). To the extent that this is not a core proceeding, Ms. Hall consents to this Court's entry of final orders and judgment.

## PARTIES

6. Ms. Hall is an individual residing in Maricopa County, Arizona.

7. Debtor Scott Welty is an individual residing in Maricopa County.

## GENERAL ALLEGATIONS

8. Ms. Hall was formerly married to the Debtor, and they have three children together.

9. The marriage between Ms. Hall and Debtor was legally dissolved under the Consent Decree, entered by the Arizona State Court on December 3, 2014 in the matter captioned *Hall v. Welty*, Arizona Superior Court for Maricopa County, Case No. FC2014-095371 (the "State Court Proceeding").

10. Pursuant to the Consent Decree, the Debtor is required to pay to Ms. Hall certain nondischargeable domestic support payments (collectively the "Domestic Support

Obligations"), as follows:

    a.    Child support of $750 per child (3 children=$2,250) per month;

    b.    Spousal support of $2,500 per month for ten (10) years; and

    c.    Additional spousal support payments totaling $65,000, in the form of annual retirement account contributions in the amount of $6,500 for a period of ten (10) years.

11.    In addition, as part of a settlement negotiated by Debtor in conjunction with the Consent Decree, Debtor was awarded the profitable family flooring business known as Artistic Floors and Construction (the "Family Business") in return for Debtor's promise to pay Ms. Hall the buy-out sum of $150,000 ("the Buy-out Obligation"), payable in three annual installments of $50,000 starting November 25, 2015 (the "Buy-out Installments").

12.    Ms. Hall relied on the terms of the Consent Decree, other written statements submitted by Debtor, and the Debtor's representations therein, when Ms. Hall agreed to relinquish her interest in the profitable Family Business to Debtor.

13.    Debtor materially defaulted under the Consent Decree by, among other things, not paying the first Buy-out Installment of $50,000 in November 2015 and not making the required annual retirement account contributions.

14.    Accordingly, Ms. Hall filed an action to enforce the Consent Decree in the State Court Proceeding.

15.    Ms. Hall's petition to enforce the Consent Decree was set for trial/evidentiary hearing on September 28, 2016.

16.    On September 27, 2016 (i.e. one day before the Petition Date), Debtor filed his voluntary petition for bankruptcy relief.

17.    Upon information and belief, Debtor's Petition was not filed in good faith.

18.    As of the Petition Date, and exclusive of Debtor's continuing monthly Domestic Support Obligations, Debtor owed Ms. Hall the sum of $223,392.83, which is itemized as follows:

    $58,000.00  Unpaid spousal support obligation for retirement contributions
   $150,000.00  Buy-out for family business

$15,308.07 Attorneys' fees incurred to enforce the Consent Decree
$2,084.76 Accrued legal interest

See, Ms. Hall's Proof of Claim at Claim Doc. 2-1.

19. Debtor testified under oath that he allegedly did not even read the Consent Decree that he signed and submitted to the State Court, demonstrating that Debtor had no intent to honor or otherwise take seriously the promises, terms and representations in the Consent Decree.

20. During the First Meeting of the Creditors in this case, Debtor testified under oath that his Statements and Schedules were true and complete. Debtor also signed his Statements and Schedules as true and complete under oath. The Debtor's Statements and Schedules were not true and complete as of the Petition Date, and are still not true and complete at the time of filing this complaint.

21. Debtor admitted under oath that the reason he filed bankruptcy is to seek a discharge of the Buy-out Obligation, yet Debtor admittedly misrepresented the known $150,000 value of that obligation in his Statement and Schedules, instead stating that the obligation was "$0.00".

22. Debtor admitted under oath to not disclosing in his Statement or Schedules the existence of his domestic support obligation to fund Ms. Hall's retirement account.

23. Debtor admitted under oath to not disclosing in his Statement or Schedules the existence of a retirement IRA account (the "IRA").

24. Debtor admitted under oath to not disclosing in his Statements or Schedules rental income earned in 2016.

25. Debtor admitted under oath to not disclosing in his Statements or Schedules the existence of a travel trailer asset owned by Debtor as of the Petition Date.

26. Defendant admitted under oath that his personal expenses are overstated in his Statement and Schedules.

27. Upon information and belief, Debtor has undervalued his personal assets in his Statements and Schedules.

5511222v1(66115.1)
4
Case 2:17-ap-00125-BKM    Doc 1    Filed 02/06/17    Entered 02/06/17 13:05:20    Desc
Main Document    Page 4 of 12

28. Upon information and belief, Debtor has materially understated his income in his Statements and Schedules.

29. During the First Meeting of the Creditors in this case, Debtor testified under oath that neither he personally nor the Family Business did business on a cash basis or received cash payment for services or goods.

30. Debtor subsequently provided directly contradictory testimony, admitting under oath that he does in fact do business on a cash basis and regularly receives cash payments. However, Debtor alleges that he does not maintain any record of cash receipts and, as such, there is no reliable method of substantiating or quantifying cash receipts.

31. Debtor admitted under oath to not producing relevant records within the scope of the Court's Rule 2004 [Doc. 16], which Debtor concedes to exist, including but not limited to:

    a. Debtor did not produce any personal banking records;

    b. Debtor did not produce any records for various bank accounts in the name of the Family Business, which were not disclosed by Debtor, but instead were discovered by Ms. Hall through independent means.

    c. Debtor did not produce complete bank records for the primary bank accounts for the Family Business;

    d. Debtor did not produce any income related records, personally or for the Family Business;

    e. Debtor did not produce any records related to the 2016 rental income received by Debtor but not included in Debtor's Statement or Schedules;

    f. Debtor did not produce any job tickets from Western States Floors ("Western States"), the company Debtor alleges to be his sole source of work and income;

    g. Debtor did not produce any billing records for work performed by Debtor or the Family Business on behalf of Western States;

    h. Debtor did not produce any payment records or check stubs for payments to Debtor or the Family Business by Western States for work performed;

  i. Debtor did not produce any payroll records or IRS Form 1099s for amounts paid to alleged subcontractors of the Family Business;

  j. Debtor did not produce any written job "estimates on handwritten contracts";

  k. Debtor did not produce any records to document alleged business losses exceeding $100,000, which Debtor alleges to be the factual predicate warranting bankruptcy relief;

  l. Debtor did not produce any records relating to Debtor's IRA asset not listed in Debtor's Statement or Schedules; and

  m. Debtor did not produce any records relating to the travel trailer asset owned by Debtor as of the Petition Date but not listed in Debtor's Statement or Schedules.

32. Debtor admitted under oath to not producing his digital QuickBooks accounting records when requested by Ms. Hall through formal discovery in the State Court Proceeding in the summer of 2016, and now alleges that such digital information is unavailable because Debtor's computer "crashed" in the weeks leading up to the Petition Date.

33. Upon information and belief, Debtor dissipated cash proceeds of more than $66,000 from the sale of real estate in June 2016 to the detriment of his creditors, without maintaining a contemporaneous accounting of the disposition of such funds.

34. Debtor admitted under oath to using personal funds to pay the debts of the Family Business in the months before the bankruptcy, and to not listing such payments in his Statements or Schedules.

35. Debtor admitted under oath to purchasing real estate in December 2015 with a cash down payment, just weeks after defaulting on his obligation to pay the first Buy-out Installment to Ms. Hall.

36. Despite claiming inability to pay his obligations to Ms. Hall, and reporting negative income in his Statement and Schedules, Debtor admitted under oath to spending thousands of dollars a year (including 2016) to purchase season football tickets with the

5511222v1(66115-1)

Case 2:17-ap-00125-BKM Doc 1 Filed 02/06/17 Entered 02/06/17 13:05:20 Desc
Main Document Page 6 of 12

Arizona Cardinals.

37. Upon information and belief, Debtor treats the entirety of his day-to-day personal expenses, both essential and extravagant, as business expenses for accounting and tax purposes, resulting in grossly understated income in the Statement and Schedules.

38. Defendant testified under oath that he does not use cash to pay any of his business debts, yet also conceded to taking cash withdrawals from his various bank accounts in an amount exceeding $90,000 over a recent twenty month period of time. These admitted facts are fundamentally inconsistent with and contradictory to Debtor's sworn representation of negative income.

39. Debtor testified under oath that in July 2016 he entered Ms. Hall's residence without permission when no one was home and removed property from Ms. Hall's residence.

## **COUNT ONE – § 523(a)(2)(A)**

40. Ms. Hall incorporates herein by this by this reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

41. Through his actions described herein, Debtor used false pretenses, false representations, and actual fraud to obtain from Ms. Hall full ownership of the profitable Family Business.

42. As a ruse to obtain control of the lucrative Family Business, Debtor promised to timely pay Ms. Hall $150,000 in three equal annual installments, when in fact Debtor had no intent to pay and Debtor knew such representations to be empty, false and fraudulent.

43. Debtor intended Ms. Hall to rely on such false and fraudulent pretenses and representations.

44. Ms. Hall reasonably relied on Debtor's false and fraudulent pretenses and representations with regards to the promised payments when agreeing to relinquish to Debtor her valuable interest in the Family Business.

45. Debtor's complete disregard for his corresponding payment obligations is

evidenced by the Debtor's own sworn testimony that he was purchasing land, getting re-married, and making extravagant personal expenditures at the time of his initial default in December 2015.

46. As a direct and proximate cause of Debtor luring the Family Business away from Ms. Hall by false pretenses, false representations and actual fraud, Ms. Hall has been injured and damaged in an amount no less than the stipulated value of her former interest in the Family Business, i.e. the Buy-out Obligation in the amount of $150,000, plus prepetition attorneys' fees of no less than $15,308.07 and legal interest no less than $2,084.76.

47. That portion of Ms. Hall's Proof of Claim representing the Buy-out Obligation ($150,000), plus attorneys' fees ($15,308.07) and legal interest ($2,084.76) is nondischargeable pursuant to §523(a)(2)(a).

### **COUNT TWO – § 523(a)(2)(B)**

48. Ms. Hall incorporates herein by this by this reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

49. Debtor used the Consent Decree, which he signed and submitted to the State Court and to Ms. Hall, along with other written statements regarding his financial condition, in order to lure the Family Business away from Ms. Hall.

50. The aforementioned written statements submitted by Debtor contained representations as to income, assets, debts, and promises to pay that were both material to the transaction and false.

51. The Debtor caused such written statements to be made and published in the context of the State Court Proceeding with intent to deceive Ms. Hall.

52. Ms. Hall reasonably relied on the materially false financial information contained in the written statements submitted by Debtor when agreeing to relinquish to Debtor her valuable interest in the Family Business.

53. As a direct and proximate cause of Debtor luring the Family Business away from Ms. Hall with materially false written statements, Ms. Hall has been injured and

damaged in an amount no less than the stipulated value of her former interest in the Family Business, i.e. the Buy-out Obligation in the amount of $150,000, plus prepetition attorneys' fees of no less than $15,308.07 and legal interest no less than $2,084.76.

54. That portion of Ms. Hall's Proof of Claim representing the Buy-out Obligation ($150,000), plus attorneys' fees ($15,308.07) and legal interest ($2,084.76), is nondischargeable pursuant to §523(a)(2)(b).

## COUNT THREE – § 523(a)(5)

55. Ms. Hall incorporates herein by this by this reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

56. The remainder of Ms. Hall's Proof of Claim involves the $58,000 outstanding balance of Debtor's support obligation to make contributions to Ms. Hall's retirement account.

57. Debtor's financial obligation to contribute the balance of $58,000 to Ms. Hall's retirement account constitutes a "domestic support obligation" for purposes of the Code.

58. Debtor's financial obligation to contribute the balance of $58,000 to Ms. Hall's retirement account is nondischargeable in this or in any future bankruptcy case pursuant to § 523(a)(5), and is entitled to priority under § 507(a)(1).

59. Additionally, Debtor's continuing Domestic Support Obligations to Ms. Hall under the Consent Decree, including Debtor's monthly child support obligation ($2,250) and spousal support obligation ($2,500), are nondischargeable in this or in any future bankruptcy case pursuant to § 523(a)(5) of the Code

## COUNT FOUR – OBJECTION TO DISCHARGE

60. Ms. Hall incorporates herein by this by this reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

61. Upon information and belief, Debtor has, with intent to hinder, delay, or defraud creditors, transferred, removed, concealed, secreted, and dissipated property of the Debtor within one year of the Petition Date and property of the estate after the Petition

Date.

62. Upon information and belief, Debtor has knowingly and fraudulently made a false oath or account in connection with this case.

63. Debtor has failed to comply with 11 U.S.C. § 521(a) by omitting and misrepresenting material information in his schedule of assets and liabilities, schedule of current income and expenditures, and statement of monthly net income.

64. Debtor's Statement and Schedules contain materially false representations concerning Debtor's financial condition and history, and Debtor has failed to explain or correct such misrepresentations despite notice and adequate opportunity.

65. Debtor has knowingly withheld critical financial records necessary to substantiate Debtor's financial representations, let alone evaluate Debtor's plan.

66. Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information and documents from which Debtor's financial condition and business transactions might be ascertained, without justification, and with intent to hinder, delay or defraud creditors.

67. Debtor has failed to satisfactorily explain alleged business losses, extravagant personal expenditures, substantial cash deposits and cash withdrawals from his numerous personal and business accounts, or the absence of general bookkeeping or accounting records to substantiate the seemingly contradictory financial representations contained in the Statement and Schedules.

68. Debtor has failed and refused to date to comply with his production obligations under the Court's Rule 2004 Order [Doc. 16], admitting under oath to not producing numerous categories of required documents, including but not limited to (a) account statements from numerous bank accounts not disclosed by Debtor, (2) evidence of income, (3) documents pertaining to assets and liabilities, and (4) bookkeeping records and company ledgers.

69. Upon information and belief, Debtor has grossly understated his income. For example, in 2015, the same year Debtor claims net taxable income of approximately

$25,000, the Debtor's bank records demonstrate cash deposits of over $100,000, cash withdrawals of over $70,000, and another $16,000 in entertainment related expenses. Such transactions are fundamentally inconsistent with and contradictory to Debtor's sworn income representations.

70. Debtor has acted in an improper manner in the months prior to the Petition Date, admitting under oath to that in July 2016 he entered Ms. Hall's residence without permission when no one was home and removed property from Ms. Hall's residence.

71. For these reasons, Debtor should be denied a discharge of any type in this or any future bankruptcy case.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff/Creditor Wendy Hall requests judgment against Debtor Scott Welty as follows:

A. Adjudging that Plaintiff's pre-petition claim, as stated in Ms. Hall's Proof of Claim at Claim Doc. 2-1, in an amount no less than $223,392.83 is nondischargeable in this or in any future bankruptcy case, pursuant to §§ 523(a)(2)(A), (a)(2)(B), and (a)(5) of the Code;

B. Adjudging that Debtor's continuing Domestic Support Obligations to Ms. Hall under the Consent Decree, including Debtor's monthly child support obligation ($2,250) and spousal support obligation ($2,500), are nondischargeable in this or in any future bankruptcy case, pursuant to § 523(a)(5) of the Code;

C. Adjudging that Debtor's prepetition Domestic Support Obligation for funding of Ms. Hall's retirement account in the amount of $58,000 is entitled to priority under § 507(a)(1);

D. Adjudging that Debtor is not entitled to be granted a discharge in this or any future bankruptcy case;

E. Awarding Ms. Hall her attorneys' fees, costs and expenses incurred in this nondischargeability proceeding; and

///

F. For such other and further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this 6th day of February, 2017.

                JENNINGS, STROUSS & SALMON, P.L.C.

                By: /s/ Andy J. Chambers
                    Paul J. Valentine
                    Andy J. Chambers
                    *Attorneys for Plaintiff/Creditor Wendy Hall*

5511222v1(66115.1)    12
Case 2:17-ap-00125-BKM   Doc 1   Filed 02/06/17   Entered 02/06/17 13:05:20   Desc
Main Document   Page 12 of 12